UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARLIE JACKSON,

      Petitioner,

v.                                                  Case No.  8:11-cv-07-T-33TGW

SECRETARY, DEPARTMENT OF CORRECTIONS,

      Respondent.
_____

## ORDER

This cause is before the Court on Petitioner Charlie Jackson's 28 U.S.C. § 2254 petition for writ of habeas corpus. Jackson challenges his conviction and sentence entered by the Circuit Court for the Twelfth Judicial Circuit, Manatee County, Florida. A review of the record demonstrates that, for the following reasons, the petition must be **denied**.

## PROCEDURAL HISTORY

On November 21, 2003, Jackson was charged by Information with one count of sexual battery on a person 12 years of age or older. On April 2, 2004, a jury found Jackson guilty as charged. He was sentenced to ten years incarceration followed by two years probation. Jackson filed a direct appeal. On September 28, 2005, the state district court of appeal per curiam affirmed Jackson's conviction and sentence. *Jackson v. State*, 915 So. 2d 1208 (Fla. 2d DCA 2005 )[table]. The mandate issued October 26, 2005.

On December 30, 2005, Jackson filed a rule 3.850 motion for postconviction relief (and two supplements to the motion). On December 1, 2006, the state trial court summarily denied the rule 3.850 motion. Jackson appealed, and on July 18, 2007, the state district

court of appeal reversed in part the state trial court's postconviction order and remanded the case with instructions to hold an evidentiary hearing on Jackson's claim that identifiable expert medical witnesses were not subpoenaed for trial. *Jackson v. State*, 975 So. 2d 485 (Fla. 2d DCA 2007).

On July 17, 2008, the state trial court held an evidentiary hearing. On October 1, 2008, the state trial court denied the rule 3.850 motion for postconviction relief. Jackson appealed, and, on September 3, 2010, the state district court of appeal per curiam affirmed the denial of rule 3.850 postconviction relief. *Jackson v. State*, 46 So. 3d 56 (Fla. 2d DCA 2010). [table]. The mandate issued November 4, 2010.

Jackson then timely-filed the present petition raising one ground for relief.

## AEDPA DEFERENTIAL STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). The AEDPA modified a federal habeas court's role in reviewing state prisoner applications to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under applicable law. *Bell v. Cone*, 535 U.S. 685 (2002).

Under §104 of the AEDPA, § 2254(d) now forbids federal courts from granting habeas relief for claims that previously were "adjudicated on the merits" in state court, unless the petitioner can establish that the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court law, or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §

2254(d)(1)(2). Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but also objectively unreasonable. *Yarborough v. Gentry,* 540 U.S. 1, 4 (2003); *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam); *Williams v. Taylor*, 529 U.S. 362, 409 (2000).

In addition, § 2254(e)(1) "provides for a highly deferential standard of review for factual determinations made by a state court." *Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002). The federal court will presume the correctness of state court findings of fact unless the petitioner is able to rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## DISCUSSION

## GROUND ONE

Jackson alleges that counsel was ineffective for failing to present identifiable medical documents (sexual assault information sheet) that would have negated a sexual battery and would have contributed to a verdict of not guilty, and for failing to subpoena "Drs. Ratner[1] and Ratcliff" for trial. Jackson raised these claims in his rule 3.850 motion for postconviction relief.

## STANDARD FOR INEFFECTIVENESS OF COUNSEL

To have a facially valid claim in alleging ineffective assistance of counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's

---

[1] Bridget Ratner was the registered nurse who conducted the rape kit examination. She is not a medical doctor.

unprofessional errors, the result of the proceeding would have been different." *Id*. However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

The standard of review is "doubly deferential" when "a *Strickland* claim [is] evaluated under the § 2254(d)(1) standard." *Knowles v. Mirzayance*, 556 U.S.--- ,129 S. Ct. 1411, 1420 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable -- a substantially higher threshold." *Id*. (quotation marks omitted).

## Analysis

Jackson was charged with the second degree felony of sexual battery. The Information specifically charged him with:

> A sexual battery upon J.W., a person twelve years of age or older, to-wit: with his fingers penetrated the vagina of J.W. , without the consent of J.W. and in the process thereof used physical force and violence not likely to cause serious personal injury to the said J.W . . .

Sexual battery is defined as "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object," and a "defendant's finger is an 'other object,' which must penetrate and not merely have union with the relevant part." *Holmes v. State*, 842 So. 2d 187 (Fla. 2d DCA 2003).

In his motion for postconviction relief, Jackson argued that the "victim's uncorroborated hearsay statement to investigating detective that defendant penetrated her vagina was insufficient by itself to establish penetration needed to support conviction for sexual battery by digital penetration." He argued that medical evidence was necessary to prove the digital penetration.

The emergency room nurse, Bridget Ratner, testified at trial that she prepared a sexual assault (rape) kit on the victim. Contrary to Jackson's assertion, the Sexual Assault Information Sheet does not prove that he did not digitally penetrate the victim. (Ex.10/R202, 465).[2] The report indicated the victim had had sexual intercourse within the five days prior to the assault, and that the suspect had ejaculated, but there was no vaginal, oral or anal penetration. (Ex.10/R202). The form did not request information regarding whether digital penetration occurred, but did indicate that an exam for spermatozoa was performed and that the victim had not bathed prior to the exam. (Ex.10/R202). Because the form did not exonerate Jackson or corroborate his theory of defense, but was silent as to whether the victim was digitally penetrated, counsel was not ineffective for stipulating that it could be excluded as evidence. The outcome would not have been different had the report been introduced at trial. In fact, the report could have damaged Jackson as the report does not indicate the victim was not digitally penetrated.

This Court gives deference to the state trial court's order denying postconviction relief in which the court noted that during the evidentiary hearing, defense counsel, Peter Belmont acknowledged that a doctor who has conducted a rape kit examination generally is unable to say whether someone was digitally or even penially penetrated. (Ex.9/R152). Therefore, the testimony Ratner, or any other medical personnel involved, would not have been beneficial to Jackson's case, as penetration cannot typically be determined.

In determining whether counsel was ineffective for failing to call a medical expert to show that penetration had not occurred, the state trial court relied on testimony from the

---

[2] All references are to Respondent's exhibits.

evidentiary hearing:

> **STATE:** Okay. Has it been your experience in the 25 years you've been doing this and the many cases you've prosecuted, sexually related, that a doctor during a rape kit exam, or excuse me, a rape exam at the hospital often is not able to say one way or another whether someone was digitally penetrated or penially penetrated?
>
> **ATTORNEY BELMONT:** I typically don't expect the doctor who is doing the rape kit exam to offer me an opinion in that regard based upon his examination.
>
> **STATE:** Okay. Has that been your experience?
>
> **ATTORNEY BELMONT:** Yes.

(Ex.9/R153).

Attorney Belmont testified at the hearing that he had taken the depositions of the emergency room doctor and nurse, so he knew "what they could testify to and would they could not." (Ex.9/151; Ex.10/R132). The testimony from these two witnesses would not have exonerated Jackson, and neither would the medical report if it had been admitted into evidence, as the report did nothing to disprove the victim was digitally penetrated.

Moreover, at the trial, prior to the parties' resting, the state trial court asked Jackson if he understood that his attorney had indicated the defense was not planning to call any witnesses, including Jackson. (Ex.10/R503). Jackson did not raise any objections at that time nor claim that there was testimony from medical personnel that had not been presented. In fact, Jackson told the court he understood there would be no witnesses presented on his behalf. (Ex.10/R503). Furthermore, the state trial court's order denying postconviction relief noted that Jackson's trial counsel was very experienced and had worked for the public defender's office for twenty-five years. (Ex.9/R150). Attorney Belmont testified at the evidentiary hearing that he was a division chief and handled the more

serious sexual offenses. He also stated that he had handled well over a hundred cases that dealt with sexually oriented crimes. (Ex.9/R150; Ex.10/R124).

Besides the victim's testimony that Jackson had committed the sexual act, there was evidence of Jackson's DNA on the victim's underwear.[3] (Ex.10/R126, 141). There was sufficient evidence of Jackson's guilt other than medical evidence, and contrary to Jackson's allegation, the testimony of the medical personnel and the report would not have been beneficial to his defense and could have been harmful.

Jackson has failed to show prejudice from any alleged deficiencies in trial counsel's performance, and has failed to overcome the presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance. Jackson fails to meet both prongs of the *Strickland* standard.

Finally, Jackson does not overcome the presumption of correctness of the state court's factual findings, 28 U.S.C. § 2254(e)(1), in analyzing and rejecting his claim under the *Strickland* framework. Jackson has not rebutted the findings by clear and convincing evidence as required by 28 U.S.C. § 2254(e)(1). Additionally, the legal conclusions reached by the state trial and appellate courts are not contrary to, nor unreasonable applications of, United States Supreme Court precedent.

Accordingly, the Court orders:

That Jackson's petition is denied. The Clerk is directed to enter judgment against

---

[3] The Court gives no credence to Jackson's statement, in his reply to Respondent's response: "Therefore, when the detective came to draw blood from the Petitioner when he simply could have done a cheek swab, has led the petitioner to believe that his DNA that was taken by the detective was placed there to make the States [sic] case stronger." (Doc. 8, p. 11).

Jackson and to close this case.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts because Petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).

Because Petitioner is not entitled to a certificate of appealability, Petitioner is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on September 6, 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Charlie Jackson